UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
CHRISTIAN KILLORAN,
TERRIE KILLORAN, and
AIDEN KILLORAN,

                    Plaintiffs,         <u>MEMORANDUM & ORDER</u>
                                            21-CV-3264(JS)(SIL)

    -against-

WESTHAMPTON BEACH SCHOOL
DISTRICT, and
MARY ANN AMBROSINI,

                    Defendants.
----------------------------------x
For Plaintiffs:     Christian Killoran, Esq., <u>pro se</u>
                   Terrie Killoran, <u>pro se</u>
                   Aiden Killoran, <u>pro se</u>
                   132-13 Main Street, Suite 13
                   Westhampton Beach, New York 11978


For Defendants:     Anne Leahey, Esq.
                   ANNE LEAHEY LAW, LLC
                   17 Dumplin Hill Lane
                   Huntington, New York 11743

SEYBERT, District Judge:

       <u>Pro se</u> plaintiffs Christian Killoran, Terrie Killoran (together, "the Parents"), and Aiden Killoran ("A.K."), a special education student, (collectively, the "Plaintiffs"), commenced this action against defendants Westhampton Beach School District ("Westhampton" or the "District") and Mary Ann Ambrosini ("Dr. Ambrosini"), the District's Director of Pupil Personnel, (together, "the Defendants"). Plaintiffs' Complaint purports to allege retaliation claims pursuant to Section 504 of the

1

Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (See Compl., ECF No. 1.) It also purports to allege constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and a state law breach of contract claim. (See id.) Plaintiffs seek monetary damages and equitable relief.

Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Complaint (hereafter, "Dismissal Motion") pursuant to Federal Rule of Civil Procedure 12(b)(1). (See ECF No. 16; see also Support Memo, ECF No. 16-1; Reply, ECF No. 19.) Plaintiffs oppose the Dismissal Motion. (See Opp'n, ECF No. 21.) After careful consideration, for the reasons stated herein, Defendants' Dismissal Motion is GRANTED with respect to Plaintiffs' federal claims. Having disposed of the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. Accordingly, Plaintiffs' Complaint is dismissed in its entirety.


[Remainder of page intentionally left blank.]

BACKGROUND[1]

I.    Factual Background[2]

        This action is one in a series of civil rights litigation
brought by Plaintiffs against Westhampton concerning the education
of A.K.  It arises out of an administrative due process hearing
initiated by Plaintiffs pursuant to the Individuals with
Disabilities Education Act ("IDEA") related to the development of
A.K.'s individualized education plan ("IEP") and placement for the
2020-2021 academic year. (See Compl.)

        Subsequent to A.K.'s August 2020 annual review by the
Committee on Special Education ("CSE"), A.K.'s Parents commenced
an administrative due process proceeding against the District.
(See Compl. ¶¶ 3, 6.)   In December 2020, following an
administrative due process hearing, Internal Hearing Officer
("IHO") Roslyn Roth ("IHO Roth") found that the District had failed
to recommend an educational placement recommendation in the least
restrictive environment ("LRE") and that the District had failed
to develop an appropriate set of transitional activities and goals,
implemented in the LRE. (See id. ¶¶ 8, 9, 10.)   IHO Roth ordered

_____

[1]  For ease of reference, the Court cites to the Electronic Case
Filing System ("ECF") pagination.

[2]  The facts set forth herein are taken from the Complaint, as well
as the documents attached to it as exhibits, and are accepted as
true for purposes of the instant motion.  See Sira v. Morton, 380
F.3d 57, 67 (2d Cir. 2004).

3

the District to reconvene a CSE for purposes of rendering an educational placement recommendation for A.K. within the LRE, and to appoint a "transitional coordinator" responsible for developing a "coordinated set of transitional activities and goals" within A.K.'s home community, as the LRE.  (See id. ¶ 11.)

In accordance with IHO Roth's order, the CSE reconvened in January 2021.  (See id. ¶ 12.)  Defendant, Dr. Ambrosini served as the CSE Chairperson.  (See id. ¶¶ 12, 13.)  Dr. Magito McLaughlin ("Dr. McLaughlin"), President of Positive Behavior Support Consulting ("PBS Consulting"), served as a CSE member and the CSE's parent-trainer and transitional coordinator.[3]  (See id. ¶¶ 19-23.)  Ms. Maureen Grauer ("Ms. Grauer"), employed by PBS Consulting, also served as a CSE member and the CSE's educational consultant.  (See id. ¶ 23.)  Thereafter, Dr. Ambrosini issued a program recommendation and a placement recommendation for A.K. to attend BOCES; she also recommended that A.K.'s coordinated set of transitional activities and goals be implemented within BOCES.  (See id. ¶¶ 14, 15.)

In March 2021, in response to Dr. Ambrosini's placement recommendation, Plaintiffs commenced another administrative due

---

[3]  Pursuant to a consulting agreement with the District, PBS Consulting provided parent coaching and training, transition planning, and educational program consultation for the 2020-2021 school year.  (See Correspondence, Ex. P-1, attached to Compl.)

process proceeding against the District; it was held before IHO Jeffrey Schiro ("IHO Schiro").  (See id. ¶¶ 16-18.)  At the March 2021 due process hearing, Dr. McLaughlin testified on behalf of Plaintiffs, stating that a March 5, 2021 letter she received from Dr. Ambrosini, which was marked "Personal and Confidential" (the "Correspondence"), caused her "to get very upset."  (Id. ¶¶ 25, 30, 34, 57; see also Correspondence, Ex. P-1, attached to Compl.) The Correspondence reviewed the services to be provided by Dr. McLaughlin pursuant to the consulting agreement between the District and PBS Consulting and provided examples of Dr. McLaughlin acting outside of that role.  (See Correspondence.)  It explained that as a parent trainer, Dr. McLaughlin was expected to provide the parents with information and available services, not to advocate on their behalf.  (See id.)  In pertinent part, the Correspondence stated:

> In light of your recent correspondence, it seems prudent to consider your role as President of PBS Consulting and the provision of Parent Coaching & Training, Transition Coordinator and Educational Consultation services to the Westhampton Beach School District.  In your February 26, 2021 email you refer to Ms. Grauer, your employee, as a "Special Education Consultant" and then propose that Ms. Grauer take on the role of a "Special Educator" neither of which have been requested by the District or contractually agreed upon.  In your email you set forth the reasons that you disagree with the CSE recommendation for the student's program and placement while offering options for PBS Consulting to provide additional services.

Further, you have promoted the services of PBS Consulting on numerous occasions ignoring the District's contractual agreements with other agencies.

The WHB and Remsenburg-Speonk BOE's have approved a consulting agreement with Positive Behavior Support Consulting for the 2020-21 school year.   The agreement describes the following services:

. . . .

If you are no longer in agreement with these descriptions as the agreed upon services to be rendered please submit an amendment to the agreement to be submitted for Board of Education approval. Otherwise, the District expects that you uphold the agreement by delivering the services as described.

In your agency's role as a Parent Trainer, you are expected to provide parents with information and available services.   Your statements and correspondence are more reflective of a parent advocate and as such is in conflict with and a violative of the BOE approved agreement.   In addition, your recommendations to the parents and to the committee to change the student's schedule, assign additional staff and services, change the pendency agreement, change room assignments/locations and revise the role of the educational consultant are not within the scope of the services to be provided by a Parent Trainer or Transition Coordinator.  If you have questions about the PBS Consulting's contractual agreement please contact my office to discuss.

You are certainly entitled to your opinions; however, it is deeply troubling that as the Transition Coordinator you are adopting a position that the most restrictive and most isolated setting possible (a one student, one teacher/provider environment) is the most

appropriate to address the transition goals for this student. The Transition Services Program, toured by yourself and members of the team, on February 25, 2021, offers the student opportunities for interacting, communicating and working cooperatively with peers while learning and practicing new skills in a realistic setting. Certainly you would concur with the value of these skills in a post-secondary setting. While it is clear that you are passionate about 'transition', it is the role of the CSE to recommend an appropriate placement to address all of the student's goals and needs including those pertaining to his transition.

The parents' desire to have their son educated within the WHB High School building has been addressed for more than six years by Impartial Hearing Officers, State Review Officers and Committees on Special Education. Whether you agree or not, the WHB School District does not possess an appropriate program for this student and is not mandated to create one. Additionally, the District will not seek to create a program by accreting services to the pendency agreement as the parents and yourself have suggested be done. Again, it is the role of the CSE to recommend an appropriate placement to address all of the student's goals (including the manner in which his transitions goals are best accomplished).

Your knowledge and expertise are well respected; it is the hope of the District that we are able to maintain a professional relationship that addresses the needs of the student as delineated in the consulting agreement approved by the District and PBS Consulting.

(Correspondence (emphasis in original).)

According to Plaintiffs, Dr. McLaughlin testified that she viewed the Correspondence as bullying her to change her

7

placement recommendation for A.K. and threatening her continued employment, as a CSE member, parent trainer, and transitional coordinator, as well as the continued retention of her company, PBS Consulting as the CSE's educational consultant. (See Compl. ¶¶ 55, 56.) She also testified that the Correspondence contained factual inaccuracies regarding the description of Dr. McLaughlin's employment contract. (Id. ¶ 58.)

Plaintiffs, who were unaware of the Correspondence prior to Dr. McLaughlin's testimony, requested its production during the March 2021 due process hearing. (See id. ¶ 31.) Despite the District's contention that the Correspondence was privileged, IHO Schiro signed a subpoena ordering its production from the District, which was produced the day before the May 27, 2021 re-convened hearing. (See id. ¶¶ 40-44.)

Further, prior to reconvening the due process hearing, IHO Schiro denied Plaintiffs' request to amend their due process complaint to add a retaliation claim pursuant to the Rehabilitation Act based upon the Correspondence. (See id. ¶¶ 45, 47.) Thus, Plaintiffs filed a new due process complaint against the District claiming that Dr. Ambrosini's actions in sending the Correspondence violated the IDEA and the Rehabilitation Act's protection against retaliation. (See id. ¶ 59.) Plaintiffs allege that Defendants have not granted IHO Schiro authority to adjudicate the Rehabilitation Act claim. (See id. ¶¶ 60-61.)

8

## II.  Relevant Procedural History[4]

On June 9, 2021, Plaintiffs filed a Complaint purporting to allege violations of the Rehabilitation Act, the ADA, Section 1983 and a state law breach-of-contract claim.  (See Compl.)  On September 10, 2021, Defendants filed the instant Dismissal Motion. (See Dismissal Motion, ECF No. 16.)  Plaintiffs filed their opposition to the Motion on October 11, 2021.  (See Opp'n., ECF No. 21.)  Defendants filed a reply to Plaintiffs' opposition on October 22, 2021.  (Reply, ECF No. 18.)

## DISCUSSION

## I.  Legal Standard for Rule 12(b)(1) Motion

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the

---

[4]  For completeness, the Court notes the following.  On May 9, 2022, in another case commenced by Mr. Killoran, Case No. 20-CV-4121, the Court issued an Omnibus Order directing the parties to show cause why Case No. 21-CV-1281 and Case No. 21-CV-5924 should not be consolidated with Case No. 20-CV-4121, since, inter alia, they all relate to the 2020-2021 academic year.  (See Case Docket, Omnibus Order to Show Cause, ECF No. 24.)  The parties were also permitted to move for the consolidation of the instant case with the other cases.  (See id.)  The parties consented to the consolidation of Case Nos. 20-CV-4121, 21-CV-1281 and 21-CV-5924. However, Defendants objected to the consolidation of the instant case arguing that the parties and claims in this case are different from the other actions and because, unlike the other actions, this case implicates the Court's subject matter jurisdiction.  (See Case No. 20-CV-4121, Defs.' May 23, 2022 OSC Response, ECF No. 37, at 3.)  Thereafter, the Court issued an order consolidating Case Nos. 20-CV-4121, 21-CV-1281 and 21-CV-5924, but maintained the instant case independent of the consolidated actions.  (See Case Docket, June 1, 2022 Elec. Order.)

statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider materials beyond the pleadings.  See Morrison v. Nat'l Austl. Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010).  Though the Court must accept the factual allegations contained in the Complaint as true, it will not draw argumentative inferences in favor of Plaintiff; subject matter jurisdiction must be shown affirmatively.  See id. Additionally, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.[5]

II.  Article III Standing

    Article III of the U.S. Constitution restricts the jurisdiction of federal courts to actual cases or controversies. See Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016) (citing Raines

---

[5] Though it is well-established that pleadings filed by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007), where, as here, an attorney is proceeding pro se, his pleadings are not entitled to the "special consideration which the courts customarily grant to pro se parties." Bazadier v. McAlary, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Killoran v. Westhampton Beach Sch. Dist., No. 19-CV-3298, 2020 WL 4740498, at *4 (E.D.N.Y. June 24, 2020) ("[T]he Court takes notice that Plaintiff [Christian Killoran], although proceeding pro se, is a registered attorney.") report and recommendation adopted, 2020 WL 4743189 (E.D.N.Y. July 27, 2020).

v. Byrd, 521 U.S. 811, 818 (1997)).  Standing to sue, "a doctrine rooted in the traditional understanding of a case or controversy," "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  Id. at 338 (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982); Warth v. Seldin, 422 U.S. 490, 498-99 (1975)).  "The hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation."  Evans v. Lynn, 537 F.2d 571, 591 (2d Cir. 1975). "As standing is 'a limitation on the authority of a federal court to exercise jurisdiction,' it is properly addressed within the context of a Rule 12(b)(1) motion."  City of New York v. Milhelm Attea & Bros., 550 F. Supp. 2d 332, 340 (E.D.N.Y. 2008) (quoting All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006)).  Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff must allege facts "that affirmatively and plausibly suggest that it has standing to sue."  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." Spokeo, 587 U.S. at 338.  An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id. at 339 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)); see also Anjum v. J.C. Penney Co., Inc., No. 13-CV-460, 2014 WL 5090018, at *6 (E.D.N.Y. Oct. 9, 2014) ("Standing refers to the requirement that a plaintiff in federal court suffer a non-speculative injury-in-fact, traceable to the conduct of the defendant, and capable of redress by a favorable decision.")  An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way."  Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560 n.1).  In comparison, "[a] concrete injury must be de facto; that is, it must actually exist."  Id. at 340 (internal quotations and citation omitted).  "Mere interest in, or concern over, a prospective defendant's acts—no matter how deeply felt—is insufficient to demonstrate injury in fact."  Evans, 537 F.2d at 591 (citing Sierra Club v. Morton, 405 U.S. 727, 739 (1972)).

       For the foregoing reasons, the Court finds that Plaintiffs have failed to plead plausible facts sufficient to show that they have suffered a "concrete and particularized" injury in fact and, therefore, lack standing to bring their claims.

A.   <u>Associational Retaliation Claims</u>

Plaintiffs allege that "Ms. Ambrosini's correspondence illustrates an . . . attack upon, not only the due process protections afforded by the IDEA, but also the protections afforded by [the Rehabilitation Act and the ADA] against retaliation." (Compl. ¶¶ 69, 75.)   They claim that the alleged acts of retaliation against Dr. McLaughlin "profile as an act of 'retaliation' executed upon [Plaintiffs]."   (<u>Id.</u> ¶¶ 66, 69, 72, 75.)

Defendants contend that Plaintiffs lack standing to bring retaliation claims pursuant to the Rehabilitation Act and the ADA.   (<u>See</u> Support Memo at 13-17.)   The Court agrees.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."   29 U.S.C. § 794(a).   It further provides that "'any person aggrieved by any act or failure to act by any recipient of Federal assistance' under the [Rehabilitation Act] may bring suit."   29 U.S.C. § 794a(a)(2).

The Second Circuit has recognized claims brought pursuant to the Rehabilitation Act based on a plaintiff's association with an individual who suffers discrimination.   <u>See</u>

Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268 (2d Cir. 2009)
(Wesley, J. concurring, but writing for the majority for that
portion of the ruling).  In Loeffler, the Second Circuit held that
"non-disabled parties bringing associational discrimination claims
need only prove [that they suffered] an independent injury causally
related to the denial of federally required services to the
disabled persons with whom the non-disabled plaintiffs are
associated."  Id. at 279-80 (emphasis added).  It found that a
hospital's refusal to provide a deaf father with a sign language
interpreter independently harmed the father's non-disabled
children, as it caused them to become interpreters for doctors
seeking to speak with the father and caused school truancy.  Id.
In reaching this conclusion, the Court construed the standing
provision of the Rehabilitation Act, § 794a(a)(2), as being
distinct from the provision prohibiting discriminatory conduct, §
794(a), noting that the type of injury a 'person aggrieved' suffers
need not be 'exclu[sion] from the participation in, . . . deni[al
of] the benefits of, or . . . subject[ion] to discrimination under
any program or activity receiving Federal financial assistance.'"
Id. (quoting 29 U.S.C. § 794(a).)  However, this broad
interpretation of standing "does not relieve the person aggrieved
of establishing an injury casually related to, but separate and
distinct from, a disabled person's injury under the statute."  Id.
at 280 (noting the plaintiff-children were required to establish

having suffered an injury independent from the father that was causally related to the hospital's failure to provide services to the father).

The Second Circuit has yet to determine whether associational standing exists for discrimination claims brought pursuant to Title II of the ADA. However, district courts in this Circuit have extended associational standing under this Title to the same extent as the Rehabilitation Act based on their similarity.[6] See, e.g., Innovative Health Sys., Inc. v. City of White Plains, 931 F. Supp. 222, 236 (S.D.N.Y. 1996) (opining that the ADA statute extending relief to "'[a]ny person alleging discrimination . . .' need not be an individual with a disability, but may be anyone injured by a covered entity's discrimination against an individual on the basis of that individual's disability"); Doe v. Westport Bd. of Educ., No. 3:18-CV-01683, 2020 WL 6382639, at *3 (D. Conn. Oct. 30, 2020) (finding that parents had standing under both the Rehabilitation Act and Title II of the ADA because they alleged a separate and distinct injury

---

[6]   Title II of the ADA, which prohibits various forms of discrimination by state and local governments, provides, in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It further provides that remedies are available "to any person alleging discrimination on the basis of disability . . . ." 42 U.S.C. § 12133.

15

resulting from the alleged denial of services to their disabled child).

Here, the Court finds that Plaintiffs do not have associational standing pursuant to the Rehabilitation Act or the ADA for two reasons. First, Plaintiffs have not alleged that Dr. McLaughlin -- the individual allegedly retaliated against -- is a person with a disability who was denied federally required services in violation of either statute. Second, Plaintiffs fail to allege that they suffered an injury independent of Dr. McLaughlin's alleged injury.[7]

Plaintiffs attempt to assert standing via their association with Dr. McLaughlin is untenable. They allege that Dr. McLaughlin, who served as a CSE member, parent-trainer, and transitional coordinator, testified at an administrative due process proceeding initiated by Plaintiffs that the Correspondence caused her "to get very upset" (Compl. ¶ 30), and that she interpreted the Correspondence as "pressuring her and/or bullying her" "to compel her to change her educational program and placement recommendations for AK," and "as a threat to her continued employment." (Id. ¶¶ 54-56.) As stated, though, nowhere is it alleged that Dr. McLaughlin suffers from a disability. Thus, the

_____

[7] Notably, Plaintiffs cite no authority, nor is the Court aware of any, extending associational standing under the Rehabilitation Act or the ADA for retaliation claims.

necessary "bridge" or "link" from the disabled person to the person alleging an associational discrimination claim is absent. Contrary to the children in <u>Loeffler</u> who had standing based on their association with their disabled father, Plaintiffs cannot base their standing upon their association with Dr. McLaughlin, who is not alleged to be disabled or alleged to have been denied benefits to which she was entitled as a person with a disability.[8] In sum, Plaintiffs lack associational standing under the Rehabilitation Act and the ADA.

Even if Plaintiffs could assert standing based on their association with a non-disabled individual, which they cannot, they would still lack standing for their failure to allege that they suffered an independent injury causally related to Dr. McLaughlin's purported "injuries" of feeling "upset," "bull[ied],"

---

[8] Notably, any retaliation claim that could potentially be asserted by Dr. McLaughlin would be based on her association with A.K., on whose behalf she advocated. (<u>See</u> Ex. P-1.) However, "there is no support for the proposition that associational discrimination claims can be brought when someone [like Dr. McLaughlin] is 'advocating' on behalf of the disabled." <u>See</u> <u>Valenti v. Massapequa Union Free Sch. Dist.</u>, No. 03-CV-1193, 2006 WL 2570871, at *14 (E.D.N.Y. Sept. 5, 2006)) (collecting cases); <u>McGRX, Inc. v. Vermont</u>, No. 5:10-CV-0001, 2011 WL 31022, at *6 (D. Vt. Jan. 5, 2011) ("Because Plaintiff's generalized allegations of advocacy on behalf of disabled Medicaid recipients fail to state a claim for associational discrimination under the ADA and RA, and because Plaintiff has not otherwise established a violation of its own legally protected interests under the ADA and RA, Plaintiff's own discrimination claims must be dismissed."). Thus, Dr. McLaughlin would not have associational standing to assert Rehabilitation Act or ADA claims with regard to her association with A.K.

and "threatened" that "her continued employment within the district was in jeopardy." (Compl. ¶¶ 55, 56; Opp'n. at 1.) Plaintiffs argue they have "associational standing" to pursue their claims because the Correspondence resulted in the "potential denial of the educational aids, benefits and services afforded to AK as a disabled person under the ADA." (Opp'n. at 4 (emphasis added).) Thus, they suffered a "concrete and distinct injury" resulting from the District's "retaliatory conduct" inflicted upon Dr. McLaughlin. (Id.) However, nowhere in their Complaint do Plaintiffs allege that after receiving the Correspondence, Dr. McLaughlin changed her recommendation for A.K.'s placement, or that A.K. was in fact denied benefits or services required by the Rehabilitation Act or the ADA. In fact, as Plaintiffs, themselves, point out, Dr. McLaughlin "resist[ed] the defendants' retaliatory conduct." (Opp'n. at 12.) Further, the Correspondence was dated after the CSE recommendation for A.K.'s placement for the 2020-2021 academic year and during an impending administrative proceeding. (See Compl. ¶¶ 12, 14, 16, 18, 25.) Thus, Plaintiffs' allegation of a "potential denial" of "benefits and services" is neither a "concrete" nor "actual" injury sufficient to confer standing. See Spokeo, 587 U.S. at 339 (holding an injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical.").

Therefore, because Plaintiffs have not alleged that Dr. McLaughlin herself is disabled and was denied federally required services, or that Plaintiffs suffered an independent injury causally related to Dr. McLaughlin's alleged injury, they fail to allege standing to assert claims pursuant to the Rehabilitation Act or the ADA. Accordingly, Plaintiffs' Rehabilitation Act and ADA claims are DISMISSED.[9]

B.   Section 1983 Claims

Plaintiffs purport to allege third-party constitutional claims based on Dr. McLaughlin's rights to free speech and due process. Specifically, Plaintiffs claim that the Correspondence "either directly or indirectly throttle[d] free speech advocated on AK's behalf, as well as . . . hinder[ed] AK's due process rights." (Compl. ¶¶ 77-78.)

---

[9]  In their Opposition and for the first time, Plaintiffs allege interference claims pursuant to the Rehabilitation Act and the ADA. (See Opp'n at 6-9.) However, a plaintiff "cannot amend h[is] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citation omitted); O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). In any event, Plaintiffs lack standing to assert interference claims pursuant to the Rehabilitation Act and the ADA for the same reasons they lack standing to assert retaliation claims, i.e., they cannot base such claims on their association with Dr. McLaughlin.

Defendants contend that Plaintiffs lack standing to bring Section 1983 claims as they "failed to set forth fact-based allegations regarding the throttling of their right to free speech or regarding a hindering of their right to due process." (Support Memo at 17-18.)  They argue that the only claimed wrongs were "purportedly suffered by Dr. McLaughlin." (Id. at 18.)  The Court agrees and finds that Plaintiffs' third-party constitutional claims fail for lack of standing.

"A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  However, a plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) "some hindrance to the third party's ability to protect his or her own interests." Camacho v. Brandon, 317 F.3d 153, 159 (2d Cir. 2003) (quoting Campbell v. Louisiana, 523 U.S. 392, 397 (1998)).

Here, Plaintiffs cannot assert the alleged constitutional claims of Dr. McLaughlin because, as discussed supra, Plaintiffs' Complaint fails to set forth sufficient factual allegations that Plaintiffs suffered an injury.  Plaintiffs allege

20

that "the manner and content of Ms. Ambrosini's [C]orrespondence illustrates an . . . attack upon, not only the due process protections afforded by the IDEA, but also upon the protections afforded by the United States Constitution." (Compl. ¶ 81.) Such speculative and conclusory allegations are insufficient to establish injury in fact for constitutional standing. See Anjum, 2014 WL 5090018, at *6 (stating standing requires that a plaintiff suffer a non-speculative injury-in-fact.) Plaintiffs "mere interest in, or concern over . . . Defendants' acts—no matter how deeply felt—is insufficient to demonstrate injury in fact." Evans, 537 F.2d at 591. Therefore, because Plaintiffs' Complaint fails to allege that Plaintiffs suffered a "concrete and particularized" injury, Plaintiffs' lack standing to assert third-party Section 1983 claims.[10],[11]   See Spokeo, 587 U.S. at 338.

---

[10]  The Court further notes that Plaintiffs' Complaint also fails to allege facts plausibly showing either (a) a close relationship between the Plaintiffs and Dr. McLaughlin that would cause Plaintiffs to be an effective advocate for Dr. McLaughlin's rights, or (b) some hindrance to Dr. McLaughlin's ability to protect her own interests, both necessary components to asserting the constitutional claims of a third party, as well as a further basis to find Plaintiffs lack standing to assert third-party Section 1983 claims.

[11]  Having determined that Plaintiffs do not have third-party standing to assert the constitutional rights of Dr. McLaughlin, it is not necessary to determine whether Plaintiffs have adequately alleged that Dr. McLaughlin's First Amendment or due process rights were violated.

III. <u>Purported IDEA Retaliation Claim</u>

For the first time in their Opposition, Plaintiffs raise an IDEA-based retaliation claim.  Defendants argue that this claim should not be considered by the Court as it was not alleged in Plaintiffs' Complaint.  (<u>See</u> Reply at 11.)  The Court agrees.

As discussed, <u>supra</u>, a plaintiff "cannot amend h[is] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." <u>K.D.</u>, 921 F. Supp. 2d at 209 n.8; <u>see also</u> <u>Williams v. Black Entm't Television, Inc.</u>, No. 13-CV-1459, 2014 WL 585419, at *11 n.8 (E.D.N.Y. Feb. 14, 2014) ("Plaintiff cannot amend his pleadings through an opposition brief."); <u>Fadem v. Ford Motor Co.</u>, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is longstanding precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.").  Since Plaintiffs' Complaint fails to raise an IDEA-based retaliation claim, Plaintiffs' IDEA-based retaliation argument is presented without a basis and, therefore, is not considered.[12]

---

[12]  Even assuming, <u>arguendo</u>, the Court found that Plaintiffs' Complaint alleged an IDEA-based retaliation claim, such claim would be dismissed as, admittedly, Plaintiffs failed to exhaust their administrative remedies.  <u>See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.</u>, 288 F.3d 478, 483 (2d. Cir. 2002) (holding failure to exhaust administrative remedies deprives the court of subject matter jurisdiction) (citing <u>Hope v. Cortines</u>, 69 F.3d 687, 688 (2d Cir.1995)).  Though Plaintiffs claim that exhaustion should be excused as futile (<u>see</u> Opp'n at 17), the Second Circuit has cautioned against expansive interpretation of

IV.  <u>State Law Claim</u>

In addition to Plaintiffs' federal claims, the Complaint also assert a state law claim for breach of contract.  However, because the Court has dismissed Plaintiffs' federal claims, there is no longer a basis for federal jurisdiction over the state law claim.  Under <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint's federal claims are dismissed in the litigation's early stages and there is no diversity jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim, which are DISMISSED without prejudice to being refiled in state court.

---

the futility exception and has refused to apply this exception in cases where the administrative process, if invoked, could have provided relief.  <u>Id.</u> at 488-89. (holding that "sweeping exceptions to the exhaustion requirement" is "at odds" with the belief that administrative agencies are in the optimal position to identify and correct errors and to "fine tune the design of their programs").

V.   Leave to Amend

        Although Plaintiffs have not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

        The Court has carefully considered whether leave to amend is warranted here.  Though dismissals based on lack of standing should generally be without prejudice, Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016), here, where the standing defect is unlikely curable, the Court denies Plaintiffs leave to amend their Complaint. See Cuoco v. Moritsugu, 222 F.3d 9, 112 (2d Cir. 2000) (holding that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint).


        [Remainder of page intentionally left blank.]

<u>CONCLUSION</u>

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that:

I.   Defendants' Dismissal Motion (ECF No. 16) is **GRANTED;**

II.  Plaintiffs' federal claims are DISMISSED WITH PREJUDICE;

III. The Court having declined to exercise supplemental jurisdiction, Plaintiffs' state law claim is DISMISSED WITHOUT PREJUDICE; and

IV.  The Clerk of Court is directed to:

A. enter judgment and, thereafter, close this case; and

B. mail a copy of this Memorandum and Order to the <u>pro se</u> Plaintiffs.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 27 2022
          Central Islip, New York